01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TREVOR DUANE ROSE,        )
                            )   Case No. C05-0089-TSZ-JPD
       Petitioner,    )
                            )
       v.                )
                            )
UNITED STATES OF AMERICA,  )   REPORT AND RECOMMENDATION
                            )
       Respondent.   )
_____ )

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is a federal prisoner who has filed a motion under 28 U.S.C. § 2255 that seeks to vacate, set aside, or correct his 2004 federal court sentence. Respondent has filed a response opposing petitioner's motion. Following a careful review of the parties' pleadings and the record, this Court concludes that petitioner's § 2255 motion should be denied.

## FACTS

On June 23, 2003, petitioner Trevor Duane Rose attempted to enter the United States from British Columbia, Canada in his Toyota Avalon. Case No.03-cr-00287, Dkt. No.19. Customs officials stopped petitioner at the border and a search of his vehicle revealed a hidden compartment that contained over 40,000 methylenedioxyamphetamine (commonly known as "MDMA" or "ecstacy") tablets. The street value of the ecstacy was later estimated to be worth over $800,000. Dkt. No.19. Agents allowed petitioner to cross into the United States, where they followed him for several hours before pulling him over and arresting him. Upon

REPORT AND RECOMMENDATION
PAGE -1

01   arrest, petitioner admitted he was transporting ecstacy.  Dkt. Nos. 15, 19.  On September 30,

02   2003, petitioner pleaded guilty to one count of importation of ecstasy.  Dkt. Nos. 15, 19.

03        On January 16, 2004, the Honorable Thomas S. Zilly sentenced petitioner to seventy

04   months in custody.  Dkt. Nos. 29, 30.  Petitioner requested a reduced sentence under the

05   United States Sentencing Guidelines arguing, *inter alia*, that he played only a minor role in the

06   importation and that he did not know the quantity of drugs that he was transporting.  Dkt. No.

07   26.

08        Petitioner did not file a direct appeal.  Instead, he seeks relief from his sentence by filing

09   this § 2255 motion.

10                              **CLAIMS FOR RELEASE**

11        Petitioner's motion relies upon the consolidated case of *United States v. Booker*, 125 S.

12   Ct. 738 (2004), to argue that his sentence would have been shorter had the Court properly

13   applied the United States Sentencing Guidelines (the "Guidelines") in an advisory fashion,

14   rather than as mandatory rules.  Case No. 05-00089, Dkt. Nos. 1, 3, 10.  He identifies at least

15   five factors that he argues would have resulted in a shorter sentence, had the Court not

16   considered the Guidelines mandatory.  Additionally, petitioner argues that *Booker* applies

17   retroactively to his case now final and before the Court on collateral review.  Dkt. No. 1, 3, 10.

18        In its response to petitioner's motion, respondent argues that the motion should be

19   denied because *Booker* does not apply retroactively to cases on collateral review.  Dkt. No. 8.

20   Respondent further argues that, even if *Booker* does apply retroactively, it would not benefit

21   petitioner because he defaulted on his claims by failing to first raise them with the Court at the

22   time of sentencing.  Dkt. No. 8.  Finally, respondent argues that petitioner's arguments lack

23   merit because the Court actually considered them at the time of sentencing and rejected them.

24   Dkt. No. 8.

25

26

REPORT AND RECOMMENDATION
PAGE -2

01

**DISCUSSION**

02
A.      Petitioner's "Non-Constitutional Booker Error" Is Not Cognizable In a
         § 2255 Motion

03

04        In *United States v. Booker*, the Supreme Court reaffirmed its holding in *Apprendi v.*

05 *New Jersey*, 530 U.S. 466, 490 (2000), that "[a]ny fact (other than a prior conviction) which is

06 necessary to support a sentence exceeding the maximum authorized by the facts established by

07 a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond

08 a reasonable doubt." *Booker*, 125 S. Ct. at 756.  The Court then applied this rule to the

09 Guidelines, and held that they violated the Sixth Amendment when applied in a mandatory

10 fashion.  The Court, however, saved the Guidelines by severing the provisions that made them

11 mandatory.  *Booker*, 125 S. Ct. at 764.  Sentencing courts are still required to consider the

12 Guidelines when determining sentences, but are not required to impose the sentence mandated

13 by the Guidelines' applicable range.  *Id.* at 764-65.

14        *Booker* therefore gives rise to at least two distinct types of error that a sentencing court

15 can commit.  First, a court can commit "constitutional *Booker* error" by relying on judge-found

16 facts, other than admissions or the fact of prior convictions, to mandatorily enhance a

17 defendant's sentence.  *U.S. v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005).  A

18 court which sentenced a defendant in this manner would violate the Sixth Amendment as it was

19 construed in *Booker*.

20        Alternatively, it is possible that a court could commit a "non-constitutional *Booker*

21 error" by applying the Guidelines in a mandatory manner.  *Gonzalez-Huerta*, 403 F.3d at 731-

22 32.  This type of error could occur because *Booker* severed the portion of the Guidelines that

23 made them mandatory.  *Id.* at 732.  The Ninth Circuit, however, has "consistently held that a

24 § 2255 petitioner cannot challenge non-constitutional sentencing errors if such errors were not

25 challenged in an earlier proceeding."  *U.S. v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996)

26 (citing *U.S. v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1995) (recognizing that certain errors

REPORT AND RECOMMENDATION
PAGE -3

01 that were undiscoverable at sentencing may be cognizable in § 2255 motions);[1] *U.S. v. Keller*,

02 902 F.2d 1391, 1393 (9th Cir. 1990)).

03       Here, petitioner's claims are properly classified as a "non-constitutional *Booker* error."

04 The record demonstrates that the Court relied entirely on the facts admitted by petitioner in his

05 plea agreement to establish his sentencing range of 70 to 87 months. *See*, Case No. 03-cr-

06 00287, Dkt. Nos. 19, 29. Indeed, petitioner does not argue that his sentence was enhanced by

07 factors not admitted by him or proven to a jury. Case No. 05-00089, Dkt. Nos. 1, 3, 10. He

08 simply claims that he might have received a lower sentence if the Court did not believe the

09 Guidelines were mandatory. Moreover, the Court considered evidence regarding petitioner's

10 assistance to the government, the extent of his involvement in his crime, whether he was a

11 continuing threat to the public, and other mitigating factors. Considering this range of factors,

12 the Court sentenced petitioner to seventy months – the low end of the sentencing range. Case

13 No. 03-cr-00287, Dkt. Nos. 24, 29. Because petitioner raises "non-constitutional *Booker*

14 errors" that turn on whether the Court properly determined his sentence, his arguments are not

15 cognizable in his § 2255 motion.

16       Even if this Court were to hold that a § 2255 motion was a suitable vehicle for raising a

17 "non-constitutional *Booker* error" petitioner's argument would still fail. His argument

18 necessarily turns on whether *Booker* applies retroactively to his case now on collateral review.

19 This Court, however, concludes that it does not.

20       B.    <u>*Booker* Does Not Apply Retroactively to Cases on Collateral Review</u>

21       Generally, decisions that establish new rules of law are not applied retroactively to

22

23

24
_____

25     [1]Even if petitioner did argue that he could not have discovered this error at sentencing,

26 which he has not, it is extremely unlikely that he would prevail. *Apprendi v. New Jersey*, which *Booker* heavily relied upon, was decided well before petitioner was convicted.

REPORT AND RECOMMENDATION
PAGE -4

01  cases on collateral review.[2]  *Teague v. Lane*, 489 U.S. 288, 303, 310-11 (1989).[3]  There are,

02  however, two exceptions to this rule.  To determine whether new rules should be retroactively

03  applied, the Court must undertake a three step analysis.  First, it must determine when the

04  defendant's conviction became final.  *Beard v. Banks*, 124 S. Ct. 2504, 2510-13 (2004).  Then,

05  it must decide whether the rule in question is a "new" rule.  *Id.*  Finally, if the rule is new, the

06  Court must determine whether it satisfies one of the two narrow exceptions to non-

07  retroactivity.  *Id.*  If the rule is substantive it should be applied retroactively.  *Schriro v.*

08  *Summerlin,* 124 S. Ct. 2519, 2522-23, and n.4 (2004).  Additionally, certain procedural rules

09  may be applied retroactively it they constitute one of a very "small set of 'watershed rules of

10  criminal procedure' [that implicate] the fundamental fairness and accuracy of the criminal

11  proceeding."  *Id.* at 2523 (internal citations omitted).

12       Here, petitioner has failed to show that the rule announced in *Booker* should be applied

13  retroactively to cases on collateral review.

14                  1.    Petitioner's Case Was Final Before *Booker* Was Issued

15       A conviction typically becomes final for purposes of federal habeas review when the

16  Supreme Court denies the petition for certiorari or the time for filing such a petition has

17  elapsed.  *United States v. Garcia*, 210 F.3d 1058, 1059 (9th Cir. 2000) (citing *Griffith v.*

18  *Kentucky*, 479 U.S. 314 (1987)).  A defendant's conviction also becomes final when the time

19  for appealing his sentence has passed.  *See United States v. Calvin*, 204 F.3d 1221, 1225 (9th

20  Cir. 2000).

21       Here, the district court issued its final judgment on January 16, 2004.  Case No. 03-cr-

22  ─────────────────

23       [2]Such rules, however, are generally applied to cases still pending on direct appeal.
    *Griffith v. Kentucky*, 279 U.S. 314, 328 (1987); *see also U.S. v. Ameline*, 409 F.3d 1073

24  (2005) (en banc) (requiring limited remand for cases raising *Booker* claims on direct review).

25       [3]Although *Teague* was a four justice plurality opinion, it is now "accorded the full
    precedential weight of a majority opinion."  *Jones v. Smith,* 231 F.3d 1227, 1236 n.5 (9th Cir.

26  2000) (internal citations omitted).

REPORT AND RECOMMENDATION
PAGE -5

01 00287, Dkt. No. 30.  Petitioner had ten days by which to file an appeal, but he did not.  *See*

02 Fed. R. App. P. 4(b)(1)(A).  Petitioner's conviction therefore became final almost a year before

03 the Supreme Court announced its decision in *Booker* on January 12, 2005.  Because

04 petitioner's case became final prior to *Booker*, for purposes of retroactivity analysis, the Court

05 must determine whether *Booker* announced a "new" rule.

06                        2.     <u>*Booker* Announces a New Rule</u>

07          Generally, decisions that establish "new" rules of law are not applied retroactively to

08 cases on collateral review.  *Teague*, 489 U.S. at 303, 310-11.  A court announces a new rule

09 for purposes of retroactivity when it "breaks new ground or imposes a new obligation on the

10 States or Federal Government."  *Teague*, 489 U.S. at 301 (internal citations omitted).  Stated

11 differently, a rule is new if its result "was not *dictated* by precedent existing at the time the

12 defendant's conviction became final."  *Id.* (emphasis in original); *accord Bockting v. Bayer*,

13 399 F.3d 1010, 1014-15 (9th Cir. 2005).  To be new, the unlawfulness of the conviction in

14 question must have been "apparent to all reasonable jurists."  *Beard*, 124 S. Ct. at 2511

15 (internal citations omitted).

16          Here, *Booker* must be said to have announced a new rule for purposes of retroactivity

17 analysis.  In *Booker*, the Court noted that it "must apply today's holdings . . . to all cases on

18 direct review."  *Booker*, 125 S. Ct. at 769 (internal citations omitted).  Such language would

19 have been superfluous were the rule dictated by precedent.  Moreover, as the Sixth Circuit

20 noted in *Humphress v. U. S.*, 398 F.3d 855, 861-62 (6th Cir. 2005) (collecting cases), the

21 federal judiciary was deeply divided over the effect of *Blakely* on the Guidelines.  The fact that

22 four Supreme Court justices dissented in *Booker* lends further support to this argument.  With

23 such widespread disagreement by "reasonable jurists" throughout the judiciary as to the effect

24 of *Blakely*, it can hardly be said that the rule in *Booker* was "dictated" by then-existing case

25 law before it was announced.  *Booker* thus constitutes a "new rule" for purposes of

26 retroactivity analysis.

REPORT AND RECOMMENDATION
PAGE -6

01                  3.      *Booker* Announced a Procedural Rule, Not a Substantive Rule

02       Substantive rules are defined as those that "narrow the scope of a criminal statute by

03 interpreting its terms [or that make] . . . constitutional determinations that place particular

04 conduct or persons covered by the statute beyond the State's power to punish." *Summerlin*,

05 124 S. Ct. at 2522 (internal citations omitted); *see also Bockting*, 399 F.3d at 1016.

06 Substantive rules can also be said to "alter[ ] the range of conduct or the class or persons that

07 the law punishes." *Summerlin*, 124 S. Ct. at 2523. They also modify the elements of a crime.

08 *Id.* at 2524. Substantive rules apply retroactively because they "necessarily carry a significant

09 risk that a defendant stands convicted of an act that the law does not make criminal or faces a

10 punishment that the law cannot impose upon him." *Id.* at 2522-23 (internal citations and

11 quotations omitted).

12       Conversely, rules that "regulate only the *manner of determining* the defendant's

13 culpability are procedural." *Id.* at 2523 (emphasis in original). According to the Supreme

14 Court, rules that allocate decision making authority between judge and jury for purposes of the

15 Sixth Amendment are "prototypical procedural rules." *Id.* Unlike their substantive

16 counterparts, new procedural rules are generally not applied retroactively because they "merely

17 raise the possibility" that someone convicted of a crime might have otherwise been acquitted.

18 *Id.* at 2523.

19       *Summerlin* makes clear that *Booker*, which impacts the allocation of decisionmaking

20 authority for Sixth Amendment purposes, is a procedural rule. *Summerlin* addressed the

21 question of whether *Ring v. Arizona*, 536 U.S. 584 (2002), should be applied retroactively to

22 cases on collateral review, and concluded that it should not. In *Ring*, the Supreme Court held

23 that an Arizona sentencing scheme that enabled a judge – not a jury – to determine sentencing

24 factors for capital cases by a preponderance of the evidence violated the Sixth Amendment.

25 *Ring*, 536 U.S. at 603-09. Because *Ring* only addressed the constitutionality of the law in the

26 context of a direct appeal, its application to a collateral habeas corpus attack remained to be

REPORT AND RECOMMENDATION
PAGE -7

01  determined.

02      To determine whether *Ring* should apply retroactively, *Summerlin* applied *Teague's*

03  retroactivity analysis and concluded that the holding was procedural in nature.  Specifically, the

04  Court found that *Ring's* requirement that juries determine certain capital sentencing factors did

05  not "alter the range of conduct Arizona law subjected to the death penalty." *Summerlin*, 124

06  S. Ct. at 2523.  In fact, the Court reasoned that it was impossible for it to have done so

07  because the decision "rested entirely on the Sixth Amendment's jury trial guarantee, *a*

08  *provision that has nothing to do with the range of conduct a State may criminalize*." *Id.*

09  (emphasis added).  Instead, *Ring* merely affected the "range of permissible methods for

10  determining whether a defendant's conduct is punishable[.]" *Id.*  The Court then concluded

11  that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural

12  rules[.]" *Id.*

13      The Ninth Circuit's analysis of whether *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

14  applies retroactively supports the conclusion that *Booker* announced a procedural rule as well.

15  *Apprendi* held that "[o]ther than the fact of conviction, any fact that increases the penalty for a

16  crime beyond the prescribed statutory maximum must be submitted to a jury and proved

17  beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  Applying *Teague*, the Ninth Circuit

18  has held that *Apprendi* was a new rule of criminal procedure and that it was not retroactively

19  applicable to cases on collateral review.   *United States v. Sanchez-Cervantes*, 282 F.3d 664,

20  668-71 (9th Cir. 2002); *Jones v. Smith*, 231 F.3d 1227, 1236 (9th Cir. 2001).  Since then, the

21  court has also held that *Apprendi*, as extended in *Blakely*, does not apply retroactively to cases

22  on collateral review, and that neither *Summerlin* nor *Blakely* undermines this non-retroactivity

23  holding.  *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246 (9th Cir. 2005).  The Ninth

24  Circuit has also held that the Supreme Court "has not made *Blakely* retroactive to cases on

25  collateral review." *Cook v. United States*, 386 F.3d 949 (9th Cir. 2004) (in the context of a

26  second or successive § 2255 motion).  Thus, both the Supreme Court and Ninth Circuit have

REPORT AND RECOMMENDATION
PAGE -8

01   held that *Apprendi, Blakely* and related Sixth Amendment cases do not announce substantive

02   rules because they relate to the allocation of decisionmaking during sentencing and not to the

03   substantive nature of any underlying crime.

04         There is no meaningful distinction between the type of constitutional rule held not to

05   apply retroactively in *Summerlin*, *Sanchez-Cervantes*, and *Cook*, and the type of constitutional

06   rule announced in *Booker*.  Like those cases, *Booker* is based upon the Sixth Amendment's

07   requirement that certain sentencing factors be proven to a jury rather than to a judge.  Indeed,

08   like *Ring* and *Blakely*, *Booker* rests largely upon *Apprendi's* holding that the Sixth Amendment

09   requires that "[o]ther than the fact of conviction, any fact that increases the penalty for a crime

10   beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a

11   reasonable doubt."  *Apprendi*, 530 U.S. at 490.  Like those cases, *Booker* has nothing to do

12   with the range of conduct that the State can criminalize, nor the elements of any underlying

13   criminal statute.  Rather, *Booker* deals with the allocation of decisionmaking authority between

14   judge and jury.  Hence, like the decisions discussed above, the decision in *Booker* is a

15   "prototypical procedural rule[]" that should not be applied retroactively to cases on collateral

16   review.

17         Petitioner argues that *Booker* is a substantive rule because it concerns the Court's

18   construction of a criminal statute and that such a construction necessarily applies from the date

19   of the statute's enactment.  Dkt. No. 10.  He argues that the decision created a substantive rule

20   because the Court's interpretation of the Guidelines effectively narrowed their scope.

21   Petitioner therefore argues that *Teague* does not apply.  Dkt. No. 10.

22         While petitioner is correct that *Teague* does not apply to substantive rules, his

23   argument falls short because it assumes that *Booker* involves construction of a substantive

24   criminal statute.  It does not.  As stated above, *Booker* addresses the manner in which

25   sentencing factors are determined, not the scope or elements of any underlying substantive

26   criminal statute.  *Booker*, in fact, does not narrow the scope of the Guidelines.  If anything, it

REPORT AND RECOMMENDATION
PAGE -9

01 broadens them by rendering them advisory – an argument petitioner makes in his motion.  Dkt.

02 Nos. 1, 3, 10.  Hence, contrary to petitioner's assertion, the fact that the Guidelines address

03 sentencing, rather than elements of a crime, is  relevant because the Guidelines do not alter the

04 range of conduct or classes of persons punishable under the law.  Instead, they merely impact

05 how sentences are determined.

06        Petitioner also argues that *Booker* is substantive because it alters the range of conduct

07 and classes of persons that the law punishes by taking away the Court's authority to

08 mandatorily punish.  Dkt. No. 10.  He argues that persons and conduct necessarily punished

09 before *Booker* may or may not be punished afterward.  Dkt. No. 10.

10        Petitioner's argument, however, misconstrues the effect of *Booker*.  First, it is not clear

11 that sentences will in fact be different than they were when the Guidelines were mandatory.

12 Moreover, while it is possible that sentencing determinations post-*Booker may* be different

13 than their pre-*Booker* counterparts, the fact remains that a sentence will still be imposed.

14 Petitioner concedes this.  Dkt. No. 10.  In other words, *Booker* impacts sentencing, not the

15 elements or scope of any substantive crime.  Only substantive rules can be said to define the

16 latter.

17        Petitioner relies on *Lindsey v. Washington,* 301 U.S. 397 (1937), and *Miller v. Florida,*

18 482 U.S. 423 (1987), but these cases are distinguishable.  *Lindsey* dealt with a challenge to

19 Washington State's then-new indeterminate sentencing regime by arguing that it violated the

20 Constitution's  Ex Post Facto Clause.  Similarly the issue in *Miller* was whether a sentencing

21 regime that was revised after petitioner was convicted and used during his sentencing violated

22 the Ex Post Facto Clause.  Neither of these cases concern the retroactive application of new

23 law in connection with a case on collateral habeas review.

24        Petitioner's reliance on *Bousely v. United States*, 523 U.S. 614 (1998), is also

25 misplaced.  *Bousely* related to the Court's construction of the specific terms of a federal statute

26 that criminalized specific types of activity.  It dealt with the Court's interpretation of the term

REPORT AND RECOMMENDATION
PAGE -10

01  "use" as it related to the use of a firearm during the commission of certain drug crimes under

02  18 U.S.C. § 924(c)(1).  In *Bousely*, the Court found that *Teague* did not apply because the

03  case involved interpretation of a substantive criminal statute.  *Id.* at 620.  By interpreting the

04  term "use," *Bousely* narrowed the scope of a criminal statute by interpreting its terms.  This

05  interpretation can also be said to have "altered the range of conduct[ ] . . . that the law

06  punishes."  As demonstrated above, however, *Booker* does neither.  Petitioner's reliance on

07  authority from other circuits is similarly flawed and is not controlling.

08      Finally, petitioner argues that *Booker* announced a substantive rule because it "altered

09  the applicable maximum sentence" for any number of substantive crimes.  Dkt. No. 10.

10  Petitioner appears to argue that because the Guidelines are now advisory, the underlying

11  criminal statute for each crime prescribes the maximum sentence.  Dkt. No. 10.  Again,

12  petitioner's argument is misplaced because the Guidelines do not impact the scope of any

13  statute's application.

14      For the reasons stated above, the new rule announced in *Booker* is procedural in nature.

15  The Court must therefore determine whether the rule fits into the narrow exception to the

16  general rule barring retroactive application of new procedural rules on collateral review.

17          4.   *Booker* Does Not Constitute a "Watershed" Rule

18      Because procedural rules have a more attenuated link to the accuracy of a criminal

19  conviction, only a limited number of "watershed rules of criminal procedure" that implicate the

20  fundamental fairness and accuracy of the underlying criminal proceeding will be applied

21  retroactively.  *Summerlin*, 124 S. Ct. at 2523 (internal citations omitted).  *Bockting*, 399 F.3d

22  at 1016-17.  To apply retroactively, a rule may not just be "fundamental" in an abstract sense,

23  but instead must "alter our understanding of the *bedrock procedural elements* [essential to] . . .

24  the fairness of a particular conviction.  *Teague*, 489 U.S. at 311 (internal citations omitted;

25  emphasis in *Teague*); *Summerlin,* 124 S. Ct. at 2523.

26      This class of procedural rules is so narrow that the Supreme Court indicated in 2004

REPORT AND RECOMMENDATION
PAGE -11

01  that it is "unlikely" that one has yet to emerge.  *Summerlin*, 124 S. Ct. at 2523.  When

02  explaining what types of procedural rules might constitute a watershed rule, the Supreme

03  Court has referred to the right to counsel announced in *Gideon v. Wainright*, 372 U.S. 335

04  (1963).  *Beard*, 124 S. Ct. at 2514 (internal citations omitted).  The Ninth Circuit has held that

05  the right to cross-examine witnesses who make certain hearsay statements, guaranteed by the

06  Confrontation Clause, "joins the very limited company of *Gideon*."  *Bockting*, 399 F.3d at

07  1019.  In making this determination, the Ninth Circuit noted that the Supreme Court has

08  described the right of confrontation as a "bedrock procedural guarantee" that "dates back to

09  Roman times" and that its importance was recognized by the founding generation.  *Bockting*,

10  399 F.3d at 1020 (quoting *Crawford v. Washington*, 541 U.S. 36 (2004).  These limited cases

11  underscore the extremely narrow scope of the "watershed" exception, and demonstrate that its

12  application is reserved for only a very limited number of truly fundamental procedural rules.

13          Conversely, the Supreme Court has held that cases that affect the manner in which

14  sentencing enhancements are determined do not constitute watershed rules that implicate the

15  fundamental fairness of a conviction.  *See*, *e.g.*,  *Summerlin*, 124 S. Ct. at 2526.  The Ninth

16  Circuit has acknowledged this distinction as well.  *Bockting*, 399 F.3d at 1016.  In *Bockting*,

17  the Ninth Circuit  explicitly juxtaposed *Summerlin* and *Crawford* to demonstrate why only the

18  latter constituted a procedural rule of watershed magnitude.  *Id.*  Specifically, the court

19  explained that *Crawford*'s rule was "unequivocal[ly]" one that "seriously decreases the

20  possibility of inaccurate conviction,"  whereas it was decidedly unclear whether the same was

21  true of the rule in *Summerlin*.  *Id.* at 1017.

22          Petitioner argues that *Blakely* and *Booker* are different than *Summerlin* because they

23  concern the burden of proof, rather than just the reliability of the factfinder.  Dkt. No. 10.

24  Because the burden of proof has been recognized as a fundamentally important procedural rule

25  and because *Booker* requires that sentencing factors be proven beyond a reasonable doubt,

26  petitioner argues it should therefore qualify as a watershed rule and be applied retroactively.

REPORT AND RECOMMENDATION
PAGE -12

01 Dkt. No. 10.

02       Given current precedent and the extremely narrow range of procedural rules that can be

03 applied retroactively, however, *Booker* cannot be said to constitute a watershed rule.  It is true

04 that *Booker* did turn on the application of the proper burden of proof to determine sentencing

05 factors.  It is also true that the Supreme Court has recognized the burden as playing a "vital

06 role" in ensuring the fairness of criminal proceedings.  *See In re: Winship*, 397 U.S. 358, 363

07 (1970).  Yet the Ninth Circuit has found that *Blakely* does apply retroactively to cases on

08 collateral appeal.  *Cook*, 386 F.3d at 950; *Cooper-Smith*, 397 F.3d 1245-46.  Petitioner has not

09 articulated how *Booker* differs from *Blakely*, nor identified any change in controlling authority

10 that supports his argument for retroactive application.  Given controlling authority in this

11 Circuit, current precedent, and the extremely narrow range of procedural rules that can be

12 applied retroactively, *Booker* cannot be said to constitute a watershed rule.

13       The district courts in the Ninth Circuit have so far reached similar conclusions.  *See,*

14 *e.g., U. S. v. Lopez -Cerda*, 2005 WL 1056658 (E.D. Wash. 2005); *Fain v. United States,*

15 2005 WL 1111235 (W.D. Wash. 2005); *U.S. v. Melton*, 2005 WL 1213666 (D. Alaska 2005)

16 (Report and Recommendation); *U.S. v. Brown*, 2005 WL 1259889 (D. Alaska 2005) (Report

17 and Recommendation); *but see U. S. v. Siegelbaum,* 359 F. Supp.2d 1104, 1108 (D. Or. 2005)

18 (rejecting petitioner's § 2255 motion but recognizing that *Booker* and *Blakely* could be found

19 to apply retroactively).  Moreover, to the Court's knowledge, every Circuit Court to have

20 considered whether *Booker* applies retroactively to cases on collateral review has determined

21 that it does not.  *See, e.g., U. S. v. Green*, 2005 WL 237204 (2d Cir. 2005); *Humphress*, 398

22 F.3d at 860; *McReynolds v. U. S.*, 397 F.3d 479, 481 (7th Cir. 2005); *U. S. v. Leonard*, 2005

23 WL 139183 (10th Cir. 2005).  Until the Ninth Circuit determines otherwise, *Booker*, like

24 *Apprendi* and *Blakely* before it, cannot be applied retroactively to cases on collateral review.

25

26

REPORT AND RECOMMENDATION
PAGE -13

**CONCLUSION**

Petitioner's claim is not properly cognizable as a § 2255 motion because it raises "non-constitutional *Booker* errors."  Moreover, even if a § 2255 motion is the proper vehicle for his claims, they must be dismissed because they rely upon *U.S. v. Booker*, which does not apply retroactively to § 2255 cases on initial collateral review.  Petitioner's § 2255 motion must therefore be denied.  A proposed order accompanies this Report and Recommendation.

DATED this 5th day of July, 2005.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -14